UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Lawrence Learner
and Marilyn Learner

     v.                                Civil No. 08-cv-177-JL
                                        Opinion No. 2008 DNH 212
Marvin Lumber and Cedar
Company and A.W.
Hastings & Co., LLC


**O R D E R**

The plaintiffs, Lawrence and Marilyn Learner, have sued

Marvin Lumber and Cedar Company and A.W. Hastings & Co., L.L.C.,

alleging defects in residential window units that the Learners

purchased from the defendants.  The defendants have moved to

dismiss the plaintiffs' claims as barred by res judicata and

release as the result of a judgment and settlement agreement

entered in a class-action lawsuit against Marvin Lumber in a

Minnesota state court, O'Hara v. Marvin Lumber & Cedar Co., Civil

Action No. 00-14027 (Minn. Dist. Ct. Dec. 4, 2001).  The Learners

object, arguing that the defendants have not conclusively

established that the Learners were members of the O'Hara class so

as to bind them by the judgment or the release.

This court has jurisdiction over this matter between the

Learners, citizens of Hollis, New Hampshire, and the defendants,

citizens of other states, under 28 U.S.C. § 1332 (diversity

jurisdiction).  The court heard oral argument on the motion to dismiss on December 18, 2008.  For the foregoing reasons, the motion is denied without prejudice to the defendants' reasserting their res judicata and release arguments in a motion for summary judgment, as more fully explained <u>infra</u>.

## I.   **Applicable legal standard**

Because res judicata and release are affirmative defenses, <u>see</u> Fed. R. Civ. P. 8(c), the burden falls to the defendants to prove them.  <u>See</u> <u>Caban Hernandez v. Philip Morris USA, Inc.</u>, 486 F.3d 1, 8 (1st Cir. 2007) (release); <u>Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mtg. Bankers Corp.)</u>, 324 F.3d 12, 15-16 (1st Cir. 2003) (res judicata).  While this can be accomplished through a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissal can occur only when facts that "conclusively establish the affirmative defense" are "definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice," including the records of prior judicial proceedings.  <u>In re Colonial Mtg.</u>, 324 F.3d at 16.

II. **Analysis**

In determining the res judicata effect of a state-court judgment, a federal court applies the law of the issuing state. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984).  Under Minnesota law, "'a judgment on the merits constitutes an absolute bar to a second suit for the same cause of action, and is conclusive between parties and privies, not only as to every other matter which was actually litigated, but also as to every matter which might have been litigated therein.'"  Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 58 (1st Cir. 2004) (quoting Sondel v. Nw. Airlines, Inc., 56 F.3d 934, 938 (8th Cir. 1995)) (bracketing and further internal quotations omitted).  In Reppert, in fact, the court of appeals ruled that the O'Hara judgment satisfied this test for res judicata, barring those plaintiffs' claims against Marvin Lumber arising from its allegedly defective windows.  Id. at 56-58.

As the court recognized, "'under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.'"  Id. at 56 (quoting Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 379 (1996) (further internal quotation marks omitted)).  But the Learners argue that--unlike the plaintiffs in Reppert--they were not members of the O'Hara class

3

and, as a result, their complaint cannot be dismissed on res judicata grounds.  See Perez v. Volvo Car Corp., 247 F.3d 303, 310-12 (1st Cir. 2001).

The O'Hara judgment approved a class action settlement between Marvin Lumber and two "Settlement Classes," a defined term including, in relevant part, "all current owners of Marvin PILT Units manufactured in calendar years 1985 through 1989." The term "Marvin PILT Units," in turn, "means windows, doors, or components thereof, manufactured by Marvin during calendar years 1985 through 1989 and using PILT as a preservative."[1]  The Learners, who allege that "[i]n or around 1986, [they] purchased certain aluminum-clad window units and related hardware . . . designed, manufactured and sold by defendant Marvin," were therefore "current owners" of windows manufactured by Marvin between 1985 and 1989 at the time the O'Hara settlement was approved.  They do not allege, however, that those windows "us[ed] PILT as a preservative."  This means, the Learners argue, that their membership in the O'Hara class and, consequently, the binding nature of the O'Hara judgment as to them, are not "definitively ascertainable" from their complaint, making dismissal on res judicata grounds inappropriate.

---

[1]PILT was the trade name of a wood sealant manufactured by PPG Industries, Inc.

4

This argument dodges the res judicata defense, at least for now.  The materials properly considered on a motion to dismiss under Rule 12(b)(6)--here, just the complaint and the O'Hara judgment--do not conclusively establish that the Learners' windows "us[ed] PILT as a preservative."[2]

In resisting this conclusion, the defendants rely on the O'Hara court's finding, in its judgment incorporating the terms of the parties' settlement agreement, that "[b]etween 1985 and 1988 Marvin treated all windows and doors with PILT."  The defendants say that this finding collaterally estops the Learners from arguing to the contrary in this litigation.  As with res judicata, however, the collateral estoppel effect of a judgment extends only to its parties and their privies.  See Crossman v. Lockwood, 713 N.W.2d 58, 62 (Minn. Ct. App. 2006).  This

_____

[2]At oral argument, the defendants took the position that, because the Learners had not specifically alleged that their windows were not covered by the O'Hara settlement, the court should grant the motion to dismiss.  The court disagrees with this reading of the Learner's complaint which, at this stage in the game, must be construed in the light most favorable to them, see, e.g., Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008), but, in any event, it is the defendants who have the burden of establishing that the Learners' claims are barred by O'Hara, as just discussed; it is not the Learners' burden to plead around that judgment.  The defendants also suggested that, if they had moved for judgment on the pleadings under Rule 12(c) rather than dismissal under Rule 12(b)(6), the outcome would be different, but those rules impose identical standards in all respects relevant here.  See id.

limitation would be meaningless if findings from the judgment itself could estop a litigant from arguing that it was not in fact a party and therefore should not be estopped, in the manner urged by the defendants.  See Discover Fin. Servs., Inc. v. Visa U.S.A., Inc., Nos. 04-7844, 04-8967, 2006 WL 2807187, at *1-*2 (S.D.N.Y. Sept. 27, 2006) (rejecting this notion as "circular logic").  So, assuming, without deciding, that the defendants could show that the O'Hara judgment meets the other criteria for collateral estoppel, they have not conclusively shown that the Learners were parties to it so as to bind them to its determination that Marvin used PILT as a preservative on all of its windows during the time at issue.[3]

This does not mean that there is any reason to doubt that, as the O'Hara court found, Marvin did use PILT on all of the windows it manufactured between 1985 and 1989--including the Learners', which would therefore place them in the O'Hara class

---

[3]Apart from its potential collateral estoppel effect--which, as just discussed, has not been demonstrated--the finding of the O'Hara court has no evidentiary value, because prior judicial findings are inadmissible hearsay, subject to exceptions (e.g., the use of a prior criminal conviction as evidence of credibility) not applicable here.  See EnergyNorth Natural Gas, Inc. v. UGI Utils., Inc., 2003 DNH 57, 5; see also, e.g., United States v. Sine, 493 F.3d 1021, 1036-37 & n.16 (9th Cir. 2007); Herrick v. Garvey, 298 F.3d 1184, 1191-92 (10th Cir. 2002); United States v. Jones, 29 F.3d 1549, 1554 (11th Cir. 1994); Nipper v. Snipes, 7 F.3d 415, 417 (4th Cir. 1993).

and bind them to the judgment.  So it remains unclear, at least from the materials presently before the court, what basis the Learners and their counsel have for alleging in their complaint that "[o]n information and belief, the claims asserted in the . . . class action did not include windows of the type at issue in this case," namely, their own "aluminum-clad window units."

The Learners point to excerpts from the trial of Marvin's own products liability case against PPG Industries, the manufacturer of PILT, <u>Marvin Lumber & Cedar Co. v. PPG Industries, Inc.</u>, No. 95-cv-739 (D. Minn. 1995), which, they say, suggest that Marvin's aluminum-clad windows suffered from problems unrelated to PILT.  But, even accepting the Learners' view as to the implication of these excerpts--which consist of a portion of one colloquy between counsel and the court, and a portion of the testimony of one witness whose identity is not apparent--it does not follow that Marvin's aluminum-clad windows were not treated with PILT, only that PILT may not have been the cause of all of the problems experienced with those windows. These materials thus provide no support for the Learners' claim that, because their windows were aluminum-clad, the windows did

not "us[e] PILT as a preservative" so as to place the Learners
outside of the <u>O'Hara</u> settlement class.[4]

Relatedly, the Learners argue that their claims cannot be
barred by the <u>O'Hara</u> judgment because they allege defects in
Marvin's aluminum-clad windows apart from PILT, which they say
was the only defect asserted in the <u>O'Hara</u> class action.  But
this argument understates the preclusive effect of the <u>O'Hara</u>
judgment.  As the court of appeals noted in <u>Reppert</u>, "[u]nder
Minnesota law, res judicata principles apply not only as to every
matter which was actually litigated, but also as to every matter
which might have been litigated, therein."  359 F.3d at 58
(internal quotation marks omitted).

Any claim of a defect in Marvin's windows manufactured
between 1985 and 1989 plainly could have been litigated in the
<u>O'Hara</u> action, whether or not that defect was PILT.  Indeed, the

---

[4]The Learners also rely on an order entered in Marvin's
lawsuit against PPG stating that Marvin "commenced this action
. . . after [it] became dissatisfied with a wood preservative
product--PILT--that [it] had purchased from [PPG] . . . between
February 17, 1985, and December 11, 1988."  <u>Marvin Lumber & Cedar
Co. v. PPG Indus., Inc.</u>, 34 F. Supp. 2d 738, 741 (D. Minn. 1999),
<u>rev'd</u>, 223 F.3d 873 (8th Cir. 2000).  The Learners argue that
this statement shows, contrary to the <u>O'Hara</u> court's finding,
that Marvin could not have treated all of its windows made
between 1985 and 1989 with PILT, since it did not even start
buying it from PPG until six weeks into 1985.  Leaving the
soundness of this logic aside, it has no bearing on whether
Marvin used PILT on the Learners' windows, purchased in 1986.

_Reppert_ court rejected the argument that claims "arising from a post-sale duty to warn, which continued through the _O'Hara_ proceedings and thereafter" were not barred by the judgment in that action, identifying a "common nucleus of operative fact between the two cases," namely, "Marvin's sale of defective windows."[5]  359 F.3d at 57-58 & n.4.  Insofar as the Learners are claiming problems with their windows unrelated to PILT--a claim which, it should be noted, is hardly apparent from the face of their complaint, which alleges only that the windows "allowed water to enter and pass through" without specifying whether this was due to PILT or, if not, what--that claim likewise arises out of Marvin's sale of defective windows.  As the court ruled in

---

[5]At oral argument, the Learners attempted to characterize this statement from _Reppert_ as (1) limited by its context to windows defective due to PILT, as opposed to anything else, (2) non-binding dictum, or (3) simply wrong.  As to point (1), the court disagrees that, simply because the plaintiffs in _Reppert_ made claims arising from PILT, _Reppert_ does not support giving broader preclusive effect to the _O'Hara_ judgment, but the point is ultimately irrelevant anyway, as explained _infra_.  As to point (2), assuming the statement is dictum, it is nevertheless owed "considerable deference" by this court.  _Doe v. Friendfinder Network, Inc._, 540 F. Supp. 2d 288, 299 (D.N.H. 2008) (internal quotation marks omitted).  As to point (3), the decisions of the court of appeals are binding on this court, regardless what it thinks of them, but, as also explained _infra_, this court harbors no doubt whatsoever that _Reppert_ was correct in observing that Marvin's alleged sale of defective windows was the transaction at issue in _O'Hara_ and thus the scope of its preclusive effect.

_Reppert_, such a claim could have been litigated in _O'Hara_ and, as a result, is precluded by the judgment there.[6]  _See_ _id._

At oral argument, the Learners vociferously disputed this conclusion, arguing that the _O'Hara_ judgment barred the claims by the plaintiffs in _Reppert_ only because--unlike the Learners' claims here--they arose out of the failure of PILT.  While the _Reppert_ court's description of the plaintiffs' claims does suggest that they were premised on "inadequate preservatives used in the manufacturing process," 359 F.3d at 55, it does not follow that the preclusive effect of the _O'Hara_ judgment extends only to such claims.  Whether or not what might be called "non-PILT" claims were at issue in _Reppert_, it is black-letter law that a final judgment in an action extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."  _Restatement (Second) of Judgments_ § 24(1) (1982).

---

[6]It may be fair to say that the Learners' claim, whatever it is, _was_ asserted in _O'Hara_:  in its judgment incorporating the parties' settlement, the court there described the action as "seeking compensation for the class described of all current owners of defective windows and doors manufactured by" Marvin, without further specifying the defect.  The court need not resolve this point, however, because the Learners' claim clearly _could have been_ asserted in _O'Hara_.

There is no question that the "transaction" out of which the
O'Hara action arose was Marvin's sale of allegedly defective
windows and that, as a result, the judgment in that action bars
any rights that the plaintiffs to that action had against Marvin
with respect to that transaction.  This result follows, moreover,
"even though the plaintiff is prepared in the second action to
present evidence or theories of the case not presented in the
first action," id. § 25 (formatting altered), e.g., the Learners'
theory that Marvin's windows suffered from defects aside from
PILT.  As the citations to the Restatement of Judgments suggest,
these are fundamental principles of res judicata followed in this
circuit, see, e.g., AVX Corp. v. Cabot Corp., 424 F.3d 28, 31
(1st Cir. 2005), Minnesota, see, e.g., Hauschildt v. Beckingham,
686 N.W.2d 829, 840-41 (Minn. 2004), and, for that matter, New
Hampshire, see, e.g., Grossman v. Murray, 141 N.H. 265, 269
(1996).  So, while the Learners' counsel repeatedly urged the
court to "read the cases" that purportedly support their cramped
view of res judicata, it remains unclear what "cases" those are.

There is simply no support for the Learners' position that a
plaintiff may sue a manufacturer, alleging that one of its
products is deficient in one respect, then, after that suit
proceeds to a final judgment, sue the same manufacturer again,
only this time alleging that the same product is deficient in

some other respect.  In fact, the authority is specifically to
the contrary.  <u>See</u> <u>Hart v. Yamaha-Parts Distribs., Inc.</u>, 787 F.2d
1468, 1470-71 (11th Cir. 1986) (ruling that claiming "different
theories of liability for alleged defects in . . . design and/or
manufacture" did not avoid res judicata); <u>Little v. V & G Welding</u>
<u>Supply, Inc.</u>, 704 So. 2d 1336, 1338 (Miss. 1997) (ruling that
judgment in earlier suit alleging design defect barred later suit
alleging manufacturing defect); <u>Abbott Labs. v. Gravis</u>, 470
S.W.2d 639, 642-43 (Tex. 1971) (ruling that earlier suit claiming
defect in drug when injected into spinal column precluded later
suit claiming defect in drug when given intravenously).  More
importantly, so are the basic rules of res judicata, as just
discussed, and common sense.

Furthermore, even assuming, <u>dubitante</u>, that the Learners'
claims could not have been brought in <u>O'Hara</u> and for that reason
are not barred by the res judicata effect of the judgment, they
would nevertheless be barred by the release incorporated into the
judgment.  <u>See</u> <u>Reppert</u>, 359 F.3d at 58-59.  As the circuit
recognized there, "'a court may permit the release of a claim
based on the identical factual predicate as that underlying the
claims in the settled class action even though the claim was not
presented.'"  <u>Id.</u> at 59 (quoting <u>Matsushita</u>, 516 U.S. at 377
(further internal quotation marks omitted)).  The release in

O'Hara accordingly applied to all claims "that have been or could have been asserted arising out of any purchase or performance of a Marvin PILT Unit," not only "to the extent that such claims are based upon any allegations that were or could have been asserted in the Amended Complaint" in that case, but also insofar as they "arise out of, directly or indirectly, any acts, facts, transactions, occurrences, conduct, representations, or omissions alleged in the Amended Complaint."

The Reppert court understood this release as "sufficiently broad to encompass" the claims by the plaintiffs there, 359 F.3d at 59, that their windows experienced "wood decay problems . . . caused by inadequate preservatives used in the manufacturing process," id. at 55. Again, the Learners suggest that their claims are different from those of the Reppert plaintiffs because they do not arise from the failure of PILT. Even if that description is apt, however, it does not follow that the Learners' claims could not have been asserted in O'Hara--as just discussed, they could have--or, in the alternative, that they do not arise "directly or indirectly" from anything alleged in the amended complaint in that case. See note 6, supra. In any event, the court cannot rule at this point that the Learners are bound by the release because, whatever the scope of its other limitations, it extends only to claims "arising out of any

13

purchase or performance of a Marvin PILT Unit."  If, and only if, the Learners' windows fit that description can they be bound by either the <u>O'Hara</u> judgment or the release.

The Learners also maintain that even if the judgment and release apply to them, their claims are not barred because the <u>O'Hara</u> settlement "was not fair and reasonable."  In response, the defendants argue that, as a federal tribunal, this court cannot examine the "fairness" or "reasonableness" of a state-court judgment due to the <u>Rooker-Feldman</u> doctrine.  <u>See</u> <u>Rooker v. Fidelity Trust Co.</u>, 236 U.S. 413 (1923); <u>D.C. Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983).  This, in turn, has prompted the Learners to challenge this court's jurisdiction over this matter altogether on the theory that the doctrine "in broad terms, deprives the district court of jurisdiction over a final judgment of a state court."[7] <u>Geiger v. Foley Hoag LLP Ret. Plan</u>, 521 F.3d 60, 65-66 (1st Cir. 2008).

Both of these arguments suffer from the common error of "conflat[ing] preclusion law with <u>Rooker-Feldman</u>."  <u>Lance v. Dennis</u>, 546 U.S. 459, 466 (2006).  As the Supreme Court explained there, "[t]he <u>Rooker-Feldman</u> doctrine does not bar actions by nonparties to the earlier state-court judgment simply because,

---

[7]The Learners filed a motion to remand this case to state court on this basis, which was denied.

for purposes of preclusion law, they could be considered in privity with a party to the judgment." Id. (footnote omitted). Otherwise, federal district courts would be stripped of the jurisdiction expressly conferred on them by Congress every time the preclusive effect of a state-court judgment was raised as a defense. This would violate both the general rule that defenses do not affect federal jurisdiction, see Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987), and the more specific one that the Rooker-Feldman doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005). The parties' arguments to the contrary fly in the face of this precedent.[8]

---

[8]The court acknowledges that, in a footnote in the Reppert opinion, the court of appeals called it "doubtful that [the O'Hara judgment's] validity [is] subject to challenge in federal court," citing Rooker and Feldman, as well as 28 U.S.C. § 1257, the Full Faith and Credit Act. 357 F.3d at 57 n.3. The defendants, perhaps understandably, rely on this footnote in arguing that the Rooker-Feldman doctrine insulates the O'Hara judgment from collateral attack in this court. But the Reppert court's observation, in 2004, appears to rest on the broad construction of the Rooker-Feldman doctrine that held sway before the Supreme Court reined it in substantially in Exxon Mobil, in 2005. See 544 U.S. at 283 (criticizing applications of the doctrine "superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738"). Again, as the Court made clear in that case, "Rooker-Feldman does not otherwise override or supplant preclusion doctrine." Id. at 284.

Yet this is not to say that this court is free to entertain a collateral attack on the "fairness" or "reasonableness" of the O'Hara judgment; it is just that any limits on this court's ability to do so are imposed by res judicata principles, rather than by the Rooker-Feldman doctrine. Lance, 546 U.S. at 466; Exxon-Mobil, 544 U.S. at 293. Those principles are codified in the Full Faith and Credit Act, 28 U.S.C. § 1738, which "requires 'the federal court to give the same preclusive effect to a state-court judgment as another court of that State would give.'" Exxon-Mobil, 544 U.S. at 293 (quoting Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 523 (1986)). Thus, as the court of appeals has instructed, federal courts "must give full faith and credit to what [state] courts have lawfully found and ordered" as part of class-action judgments. Nottingham Partners v. Trans-Lux Corp., 925 F.2d 29, 32-33 (1st Cir. 1991). Nevertheless, the prevailing view holds that a party may collaterally attack a class action judgment on the grounds that it was entered with insufficient notice or that the class members were not adequately represented. See 18A Charles Alan Wright et al., Federal Practice & Procedure § 4455, at 468-87 (2d ed. 2002); accord Reppert, 359 F.3d at 56-57 (considering argument against giving res judicata effect to O'Hara judgment due to allegedly inadequate notice).

16

Here, the Learners argue, generally, that the O'Hara judgment violates due process, specifically in that the notice was insufficient.  This is an exceedingly difficult argument to sustain at either level.  First, the court in Reppert expressly found the notice of the O'Hara proceedings to be "appropriate," binding the plaintiffs there to the settlement even though they had not received actual notice.  359 F.3d at 56-57.  The court observed that the notice consisted of "notification by mail to all known members of the certified class, and the publication of this notice being placed in 33 newspapers of general circulation throughout the United States," including "a toll-free number and the address of a web-site, established to provide potential class members with information about the class action and to make available appropriate forms for their active participation in the proceedings or to allow them to opt out of the suit."  Id. at 55. The court ruled that "as applied to [the plaintiffs], the newspaper notices met the legal requirements of due process," even though they had not received the mailing.  Id. at 57.

The Learners argue that, because this ruling was based on the appearance of the notice in The Boston Globe, rather than any newspaper published in New Hampshire, it does not foreclose their argument that notice to New Hampshire residents like them was

insufficient.  That notion strikes the court as farfetched.[9]  The Learners have also claimed that the "class notice was vague, and failed to give sufficient information," but the Reppert court ruled otherwise, at least implicitly, in concluding that the notice satisfied due process.  See also One Cowdray Park LLC v. Marvin Lumber & Cedar Co., 371 F. Supp. 2d 167, 171 (D. Conn. 2005) (concluding that notice of O'Hara settlement satisfied due process).  That ruling would appear to be controlling here.

The Learners also argue that, apart from its allegedly defective notice, the O'Hara judgment violated their due process rights by extinguishing their claims despite their "favorable legal position" under New Hampshire products liability law as opposed to the law of other states.  Again, however, absent inadequate notice--which has been rejected by Reppert--or representation--which the Learners have not claimed--a class member cannot collaterally attack the resulting judgment.  See Nottingham Partners, 925 F.2d at 32-33; Haas v. Howard, 579 F.2d 654, 657-59 (1st Cir. 1978); see also Epstein v. MCA, Inc., 179 F.3d 641, 648-50 (9th Cir. 1999); Thompson v. Edward D. Jones & Co., 992 F.2d 187, 190 n.5 (8th Cir. 1993); Patrowicz v.

---

[9]The court notes that The Boston Globe is widely circulated in New Hampshire, particularly in the southern part of the state where the Learners reside.

<u>Transamerica HomeFirst, Inc.</u>, 359 F. Supp. 2d 140, 151-52 (D.

Conn. 2005).  As Wright, Miller, and Cooper have observed,

> If class members could sit back and see whether the
> court awards them a desirable judgment and then attack
> the judgment collaterally if unsatisfied with the award
> they receive, the purpose of res judicata would be
> undermined . . . .  Due process entitles class members
> to notice and adequate representation.  It does not
> entitle them to continue to challenge the defendant's
> conduct until they are ultimately successful.

18A Wright, <u>supra</u>, § 4455, at 477 (quoting <u>Quigley v. Braniff</u>

<u>Airways, Inc.</u>, 85 F.R.D. 74, 76-77 (N.D. Tex. 1979)); <u>see also</u>

<u>Restatement (Second) of Judgments</u> § 72 *cmt. d* (1980).

That is precisely what the Learners are trying to accomplish

here by questioning the "fairness" and "reasonableness" of the

judgment resulting from the <u>O'Hara</u> settlement.[10]  The Learners

_____

[10]Even if the Learner's attack on the "fairness" and
"reasonableness" of the <u>O'Hara</u> judgment were treated as a
challenge to the adequacy of the class representation in that
proceeding, further obstacles remain.  First, while the issue
remains far from settled, <u>see</u> 18A Wright, <u>supra</u>, § 4455, at 484-
487, some courts have held that if a state court deems
representation adequate in the course of issuing a class action
judgment, federal courts are bound to give full faith and credit
to that determination:  it may not be re-examined in a collateral
proceeding.  <u>See</u>, <u>e.g.</u>, <u>Epstein</u>, 179 F.3d at 648.  The court of
appeals appears to have endorsed that view in <u>Reppert</u>, as
discussed in note 8, <u>supra</u>.  Here, the <u>O'Hara</u> court specifically
found that the action satisfied Rule 23 of the Minnesota Rules of
Civil Procedure, which demands, among other things, adequate
representation.  Minn. R. Civ. P. 23.01(d).
Second, even if a class-action judgment could be
collaterally attacked for inadequate representation, the court of
appeals has indicated that, for such an attack to be successful,
it must rely on more than the representative's mere "failure to

had the chance to appear in the O'Hara proceedings to object to
the proposed settlement, or to opt out of them altogether, on the
grounds they now urge, viz., the relative strength of their
claims under New Hampshire law.  See Reppert, 359 F.3d at 55-57.
Had they opted out, the settlement would have posed no obstacle
at all to their bringing such claims, see One Cowdray Park, 371
F. Supp. 2d at 171.  Had they objected but been overruled, they
would have been entitled to appeal in the Minnesota courts and,
if that failed, to press their due process concerns by seeking
certiorari in the United States Supreme Court, see Nottingham
Partners, 925 F.2d at 33.  The court of appeals has instructed
that this, rather than resort "to the lower federal courts in the
vain pursuit of back-door relief," is the proper means of
challenging the merits of a class-action settlement.[11]  Id.

---

pursue a variation in the claim for relief."  Haas, 579 F.2d at
657 n.2.  Any failure on the part of the O'Hara class
representative to press its members' potential claims under New
Hampshire law would seem to fall into that category.

     [11]At oral argument, the Learners invoked the Supreme Court's
decision in Epstein in support of their right to attack the
O'Hara judgment collaterally.  But the Court in Epstein
specifically declined to consider that issue.  516 U.S. at 379
n.6.  And, when the case was remanded to the Ninth Circuit, that
court expressly held that rulings of adequate notice and
representation by a class-action court could not be collaterally
attacked, see Epstein, 179 F.3d at 648, which, again, appears to
reflect the view of the First Circuit.

Of course, the "fairness" and "reasonableness" of the O'Hara settlement are beside the point here unless the Learners were parties to it.  If they were not, in fact, they do not have standing to challenge the judgment at all, see Restatement (Second) of Judgments § 76 *cmt. a* (1982), even on the limited bases on which a class action judgment may be collaterally attacked.  The court has discussed the Learners' attempt at undermining the O'Hara judgment, then, only to alert them and their counsel to the seeming inevitability that, if they are indeed members of the O'Hara class, they cannot prevail in this action.  Because establishing the Learners' membership in the O'Hara class seems similarly--if not definitively--inevitable, they may wish to consider the value of prolonging litigation in which they have little chance of prevailing.[12]

---

[12]In addition to their strict products liability theory, the Learners have also brought a claim against the defendants for violating the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A, by entering into the class settlement in O'Hara and subsequently advising the Learners that their claims were barred by it "without having a good faith basis for believing that the O'Hara settlement applied to [their] claims, or, even if it did apply nominally to their claims, that it was legally effective to bar such claims."  But any theory based on the defendants' invocation of the O'Hara settlement obviously cannot succeed if, in truth, it does bar the Learners' products liability claim (putting aside other potential problems with that theory).  And, insofar as the Learners' consumer protection claim arises out of the scope of the O'Hara settlement itself, it amounts to a collateral attack on the fairness of that settlement which, as just discussed, is impermissible--particularly because,

This may be particularly wise in light of the court's question, already noted, as to whether the Learners and their counsel had a good-faith basis for maintaining their claim that their windows were not covered by the O'Hara judgment.  See Fed. R. Civ. P. 11(b); see also 28 U.S.C. § 1927 (authorizing court to require counsel who "multiplies the proceedings in any case unreasonably and vexatiously" to pay "costs, expenses and attorneys' fees reasonably incurred because of such conduct").

Nevertheless, at this stage in the proceedings, the court cannot definitively say that the Learners' windows used PILT so that the O'Hara settlement bars their claims; any decision on that issue will have to await summary judgment.  To that end, counsel shall confer no later than December 31, 2008 for the purpose of agreeing upon a schedule for taking discovery on the limited issue of whether PILT was used as a preservative in the allegedly defective windows that the Learners purchased from the defendants, and for briefing motions for summary judgment on that issue.  See Fed. R. Civ. P. 26(f).  The parties shall then forthwith submit the schedule, which need not include deadlines for any other events in the litigation, to the court for

---

if the Learners were indeed parties to O'Hara, they are collaterally estopped from relitigating that court's finding that the settlement was fair.

approval.  If counsel cannot reach agreement, each party shall submit its own version of such a schedule to the court for ruling.  No discovery will be permitted on any other subject until the defendants' res judicata and release defenses are adjudicated in this fashion.

## III. <u>Conclusion</u>

For the foregoing reasons, the defendants' motion to dismiss (document no. 4) is denied without prejudice to reasserting their res judicata and release arguments in a motion for summary judgment, following a period of discovery on the limited issue of whether PILT was used in the allegedly defective windows purchased by the Learners.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  December 19, 2008

cc:  John R. Harrington, Esq.
     Beth G. Catenza, Esq.
     Donald J. Brown, Esq.
     Emily G. Rice, Esq.